LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

JACQUELINE COTHRAN, individually and as a successor in interest to Robert Cothran, deceased,

Plaintiff,

vs.

COUNTY OF LOS ANGELES;  ZINNIA MALOLOS, STEVE RODNEY, BASIL FELAHY, and DOES 1- 10, inclusive,

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

1.   Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)
2.   Fourteenth Amendment – Substantive Due Process (42 U.S.C. §1983)
3.   Municipal Liability – Failure to Train (42 U.S.C. §1983)
4.   Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)
5.   Municipal Liability – Ratification (42 U.S.C. § 1983)
6.   Failure to Summon Medical Care (Cal. Gov't Code §845.6) (including wrongful death)
7.   Intentional Infliction of Emotional Distress
8.   Negligence – Medical Malpractice
9.   Negligence
10.  Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff JACQUELINE COTHRAN, individually and as a successor-in-interest to Robert Cothran, deceased, for her Complaint against Defendants County of Los Angeles (including its Los Angeles County Sheriff's Department ("LASD"), ZINNIA MALOLOS, STEVE RODNEY, BASIL FELAHY, and DOES 1-10, and hereby alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

## INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and California law in connection with the in-custody death of Plaintiff's son, Robert Cothran (deceased) on October 27, 2019, and the repeated denial of medical care to him starting on June 8, 2019.

## PARTIES

4.      At all relevant times, Plaintiff JACQUELINE COTHRAN ("COTHRAN") was an individual residing in the County of Los Angeles, California and was the mother of

Robert Cothran ("DECEDENT").  COTHRAN sues in her individual capacity as the mother of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT.  COTHRAN also sues in her individual capacity for the violations of her own rights.  COTHRAN seeks damages to the extent permitted by law.

5.      At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity existing under the laws of political subdivision for the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, and the LASD and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was the employer of all individual Defendants.

6.      Defendant ZINNIA MALOLOS ("MALOLOS"), STEVE RODNEY ("RODNEY"), and BASIL FELAHY ("FELAHY") are jail nurses and/or other jail medical professionals for the LASD and the COUNTY.  At all relevant times, MALOLOS, RODNEY, and FELAHY were acting under color of state law within the course and scope of their duties as a jail nurse for the LASD.  At all relevant times, MALOLOS, RODNEY, and FELAHY were acting with the complete authority and ratification of their principal, Defendant COUNTY.  These individual defendants are each named in both their individual capacities and official capacities.

7.      Defendants DOES 1-6 are correctional officers or deputies, guards, jail nurses and/or other jail medical professionals, and other staff working for the LASD and the COUNTY.  At all relevant times, DOES 1-6 were acting under color of state law within the course and scope of their duties as correctional officers for the LASD.  At all relevant times, DOES 1-6 were acting with the complete authority and ratification

of their principal, Defendant COUNTY. These individual defendants are each named in both their individual capacities and official capacities.

8.     Defendants DOES 7-10 ("SUPERVISORY DOES") are managerial, supervisorial, and policymaking employees of the LASD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the LASD and employees of the COUNTY.  DOES 7-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

9.     On information and belief, MALOLOS, RODNEY, FELAHY, and DOES 1-10 were residents of the County of Los Angeles.

10.    In doing the acts and failing and omitting to act as hereinafter described, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-6 were acting on the implied and actual permission and consent of Defendants DOES 7-10, and DOES 7-10 are sued under a theory of *respondeat superior*.

11.    In doing the acts and failing and omitting to act as hereinafter described, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

12.    The true names and capacities, whether individual, corporate, association or otherwise, of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names.  Plaintiff will seek leave to amend her complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

14.     All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

15.     Defendants MALOLOS, RODNEY, FELAHY are sued in their individual capacities.

16.     DOES 1-10 are sued in their individual capacities.

17.     Plaintiff has submitted a late claim, along with an application to file a late claim, to the COUNTY pursuant to California Government Code Section 946.6.  On October 2, 2020, COUNTY rejected the late claim application but at that point had not made any decision on the Claim for damages.  Thereafter, Plaintiff timely filed a petition for relief of the provisions of Government Code Section 945.4 to the Los Angeles County Superior Court pursuant to California Government Code Section 946.6 and Code of Civil Procedure Section 410.10.  The hearing on the petition is now set for May 28, 2021, and the notice was sent to the COUNTY on February 10, 2021.


## FACTS COMMON TO ALL CLAIMS FOR RELIEF

18.     Plaintiff repeats and re-alleges each and every allegation in paragraph 1 through 17 of this Complaint with the same force and effect as if fully set forth herein.

19.     On June 7, 2018, DECEDENT was a pretrial detainee at the Los Angeles County Jail when Plaintiff sent all pertinent medical records covering the previous surgery and recovery period to Los Angeles County Sheriff Department Medical Command Center ("MCC") which included letters from DECEDENT's primary treating physician and cardiologist giving a full information of DECEDENT's

complex medical history.  The letters also included medical recommendations which state that DECEDENT was required to be seen closely by a cardiologist every month.

20.    On June 8, 2019, DECEDENT requested to see a doctor as he was having palpitations and trouble with breathing.  Plaintiff called MCC and spoke with Nurse Mano regarding DECEDENT's symptoms and that he needed an appointment with a cardiologist.  The nurse told Plaintiff that it might take 30 days before DECEDENT could see cardiologist and that MCC had DECEDENT's medical records from Cedars Sinai Medical Center where DECEDENT had undergone an Aortic Valve Replacement and a repair was done in November, 2018.

21.    On June 14, 2019, DECEDENT continued to ask DOES 1-6, including jail nurses, to see a doctor for his pains.  DOES 1-6, including jail nurses at the Los Angeles County Jail, refused to get DECEDENT a doctor and kept telling him to wait for an appointment.

22.    On July 12, 2019, Plaintiff made multiple calls to MCC and to the Watch Commander's Office requesting that DECEDENT be taken to a hospital for medical evaluation with cardiologists because DECEDENT needed to be monitored monthly by cardiologists.  Nurse Stanton stated that Men's Central Jail doctors determine when an inmate, including DECEDENT, is allowed to see a cardiologist, and not a private medical provider like DECEDENT's doctors at Cedars Sinai Medical Center. DECEDENT had not seen a cardiologist for almost two months at that point.

23.    After a gross delay in excess of three months, with deliberate indifference for DECEDENT, DOES 1-6 and other COUNTY employees eventually took DECEDENT to the Emergency Room at the LAC + USC Hospital on August 27, 2019.  DECEDENT told the staffs at the ER that his main discomforts were the excruciating pains and heart palpitation and that he is a heart patient with recent surgeries.  DECEDENT asked to speak to a doctor but his requests were ignored. When DECEDENT refused to leave the ER until he talks to a doctor, DOES 1-6 told

DECEDENT that he would be sent to the holding cell if he refused to leave.  Shortly thereafter, discharge papers were handed to the DOES 1-6, and DECEDENT was sent back to the jail.

24.     On August 28, 2019, DECEDENT became very ill all night and asked for medical attention, but DOES 1-6 ignored his request.  On the next day, DECEDENT was on his cell's floor with severe pain but was still not getting medical attention. After Plaintiff's multiple calls to the jail, DECEDENT was taken to the clinic but he returned to his cell with only pain medicine after seeing only a nurse.  DECEDENT still could not see a cardiologist.

25.     From September 2, 2019 through September 27, 2019, DECEDENT had continuously asked for medical attention and to see a cardiologist.  Plaintiff had also made continuous calls to MCC and Watch Commander's Office for an adequate medical attention to DECEDENT by a cardiologist.

26.     On September 28, 2019, DECEDENT told DOES 1-6 several times that he was having a chest pain and felt as though he was about to have a heart attack and he needs to see a doctor.  DOES 1-6 responded that DECEDENT needed to send the medical request form to get an appointment with the line doctor.  Plaintiff called the Watch Commander's Office and begged him to take DECEDENT to an ER for his chest pain.  On September 28, 2019, DECEDENT was taken to an ER at LAC + USC Hospital but no cardiology orders were placed despite the fact that he was having a chest pain.  Even the discharge paper states that DECEDENT was expressing chest pain and showing borderline dilated main pulmonary artery.  The discharge paper also stated that a continued attention on follow-up imaging was advised.  However, DECEDENT was discharged the next day on September 29, 2019 even though his chest pain and difficulty in breathing continued, and a continued attention to his pulmonary artery was not given.  Again, discharge papers were given to DOES 1-6 and not given to DECEDENT.

27.    DECEDENT continued to request for a cardiologist for his chest pain and informed that he also needed to see a doctor for a blood in his stools. DECEDENT could not see any doctor since his visit to ER on September 29, 2019 even though the symptoms gotten worse every day.  Plaintiff also kept asking MCC that an adequate medical attention be given to DECEDENT as he needed to see a cardiologist and taken to an ER, not the clinic at the jail, and kept informing nurses, including Nurse Mano, Nurse Stanton, and Nurse C, and DOES 1-10 of DECEDENT's heart surgery history and pains that DECEDENT had been having for months.  On or about October 10, 2019, DECEDENT could not see a doctor but saw Nurse RODNEY at the facility but was only given a cough medicine even though he was not coughing. When asked why, RODNEY told DECEDENT that he would have to wait.  On or about October 14, 2019, DECEDENT saw doctor FELAHY but he ignored DECEDENT's pains and failed to refer DECEDENT to a cardiologist.  Both DECEDENT and Plaintiff's effort to get adequate medical attention for DECEDENT continued until October 19, 2019.

28.    On October 20, 2019, DECEDENT was taken to an ER at LAC + USC Hospital after collapsing on his cell's floor on the day before.  Before being taken to the ER, Nurse MALOLOS examined DECEDENT at the MCJ and concluded that he was appearing healthy but having a respiratory problem.  DECEDENT was placed in ICU on October 20, 2019 but the DECEDENT's health condition had severely deteriorated by the time he was taken to the ER to the extent that there was nothing that could be done for him.  DECEDENT kept having excruciating pains and was in despair until he died on October 27, 2019.  Defendants failed to provide or summon proper medical aid for DECEDENT, failed to timely transport DECEDENT to a hospital where they could receive proper care, and failed to protect DECEDENT from harm.

29.    Each of the named Defendants were integral participants in the denial of

medical care, the negligent treatment of DECEDENT, and other violations of DECEDENT's and Plaintiff's rights.

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)

(By Plaintiff COTHRAN, as a successor-in-interest to DECEDENT, against Defendants MALOLOS, RODNEY, and FELAHY and DOES 1-10)

30.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 29 of her Complaint with the same force and effect as if fully set forth herein.

31.    The Fourteenth Amendment's Due Process Clause of the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where prison officials are deliberately indifferent to inmates' medical needs.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  The failure to provide such care constitutes a form of punishment imposed on persons not convicted of a crime, which is impermissible. *Bell v. Wolfish*, 441 U.S. 520 (1979).

32.    Pursuant to the Fourteenth Amendment, DECEDENT was entitled to receive necessary medical attention while in the care and custody of the COUNTY/LASD.

33.    At all relevant times, Defendants MALOLOS, RODNEY, FELAHY and DOES 1-10 were acting under color of state law.

34.    Defendants MALOLOS, RODNEY, FELAHY and DOES 1-10 had actual knowledge of DECEDENT's prior heart surgeries and that DECEDENT needed to see cardiologists once a month when DECEDENT was in custody at the LASD/ Men's Central jail (MCJ), since the time that COTHRAN submitted DECEDENT's all pertinent medical records to LASD MCC on June 7, 2019.  Since June 7, 2019, both DECEDENT and COTHRAN had consistently informed LASD that DECEDENT needed to see a cardiologist.

9

35.     Throughout DECEDENT's incarceration period of five (5) months, DECEDENT verbalized his need for medical attention by cardiologist for his chest pain and filed medical request forms as well.  On September 28, 2019, DECEDENT was taken to an ER at LAC + USC Hospital but no cardiology orders were placed despite the fact that he was having a chest pain.  Even the discharge paper states that DECEDENT was expressing chest pain and showing borderline dilated main pulmonary artery.  The discharge paper also stated that a continued attention on follow-up imaging was advised.  However, DECEDENT was discharged the next day on September 29, 2019 even though his chest pain and difficulty in breathing continued.  On or about October 10, 2019, DECEDENT could not see a doctor but saw Nurse RODNEY at the facility but was only given a cough medicine even though he was not coughing.  When asked why, RODNEY told DECEDENT that he would have to wait.  On or about October 14, 2019, DECEDENT saw doctor FELAHY but he did not take notice of DECEDENT's pains and failed to refer DECEDENT to a cardiologist.  A continued attention to his pulmonary artery that was needed as stated in DECEDENT's discharge paper from September 29, 2019 was not given until he was taken to the hospital and placed in the ICU on October 20, 2019 after collapsing on his cell's floor the day before.  Before DECEDENT was taken to the hospital on October 20, 2019, nurse MALOLOS saw DECEDENT and concluded that DECEDENT appeared healthy and had a respiratory problem.

36.     Throughout DECEDENT's incarceration period, COTHRAN also requested multiple times that DECEDENT be taken to the hospital to see a doctor, specifically a cardiologist.  Defendants MALOLOS, RODNEY, FELAHY and DOES 1-10 and other WCC and MCJ personnel willfully ignored DECEDENT's medical condition and his serious medical needs by refusing to send DECEDENT to the hospital and/or to provide adequate medical treatment sufficient to prevent the death of DECEDENT.

37.     Defendants MALOLOS, RODNEY, FELAHY and DOES 1-10 failed to take

reasonable measures to abate the severe medical risk to DECEDENT, despite both DECEDENT and COTHRAN's continuous requests for medical attention, specifically to be seen by a cardiologist.  By not providing timely adequate medical attention to DECEDENT, particularly as it relates to his heart condition, Defendants caused DECEDENT's injuries, which resulted in his death.

38.     Defendants knew that failure to provide DECEDENT with timely medical attention, including by a cardiologist, could result in serious medical complications and death, but Defendants disregarded that serious medical emergency, directly causing DECEDENT great bodily harm and death and failed to protect DECEDENT from harm.

39.     Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 were also deliberately indifferent to DECEDENT's medical needs, medical condition, right to life, and health.  The indifference to DECEDENT's medical needs as alleged above were obvious, serious, and substantial.  Defendants' acts and omissions as alleged above served no legitimate penological purpose and were sufficiently harmful to evidence deliberate indifference to serious medical needs.

40.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered serious physical injuries (including death and pre-death pain) and emotional distress, mental anguish, and pain.

41.     Defendants are liable for the denial of medical care to DECEDENT, and for DECEDENT's injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

42.     The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10.

43.     Plaintiff COTHRAN brings this claim as a successor in interest to DECEDENT

and seek survival damages under this claim, including for DECEDENT's pre-death pain and suffering and loss of enjoyment of life.  Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C §1988 on this claim.

## SECOND CLAIM FOR RELIEF

**Fourteenth Amendment – Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)**

(By Plaintiff COTHRAN, individually, against Defendants COUNTY, MALOLOS, RODNEY, FELAHY, RODNEY, and DOES 1-10)

44.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45.     Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with her son, DECEDENT.

46.     At all relevant times, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 acted under color of state law.

47.     As alleged above, Defendants had actual knowledge of DECEDENT's need for medical attention from cardiologists and his chest pains but failed to protect DECEDENT from harm, as follows: Defendants MALOLOS, RODNEY, FELAHY, and LASD staffs such as DOES 1-10 had knowledge of DECEDENT's prior heart surgeries and needs for close monitoring by cardiologists since June 7, 2019 when COTHRAN send over pertinent medical records to LASD MCC. Despite Defendants having actual knowledge of DECEDENT's condition even prior to DECEDENT's call for a doctor for a severe chest pain on August 28, 2019, DECEDENT was not

properly and adequately medically screened, nor was he properly evaluated by a cardiologist while he was in distress on August 28, 2019.

48.     On August 28, 2019, DECEDENT was taken to the ER at LAC+USC Hospital but was treated for his stomach not the heart even though he had a chest pain.  He was not given a chance to talk to a doctor at the ER.  When DECEDENT asked to talk to a doctor before getting discharged, LASD MCJ deputy guarding DECEDENT told him that DECEDENT would be sent to the holding cell if he refused to get discharged.   DECEDENT's request to see a doctor or a cardiologist was ignored, and DECEDENT was sent back to jail that evening.  DECEDENT was not provided with an adequate medical attention.   DECEDENT was very ill that night but DOES 1-10 ignored DECEDENT's calls for medical attention.  On August 29, 2019, COTHRAN called the LASD Watch-Commander's Office to let the jail staff and LASD personnel know that DECEDENT was in excruciating pain on his cell's floor and that he needs an urgent medical attention.  Approximately two hours later, DECEDENT was taken to a clinic but was only seen by a nurse, not a doctor.  The nurse did not provide proper medical attention.  In the afternoon of August 29, 2019, COTHRAN called MCC to inquire why DECEDENT was not seen a doctor.  Nurse Mano at MCC told COTHRAN that the reason was because DECEDENT had recently been to LAC + USC Hospital.  On or about October 10, 2019, DECEDENT could not see a doctor but saw Nurse RODNEY at the facility but was only given a cough medicine even though he was not coughing.  When asked why, RODNEY told DECEDENT that he would have to wait.  On or about October 14, 2019, DECEDENT saw doctor FELAHY but he did not take notice of DECEDENT's pains and failed to refer DECEDENT to a cardiologist.  COTHRAN and DECEDENT continuously requested and begged that DECEDENT see a doctor or specifically a cardiologist for his chest pain but DECEDENT was never given a chance to see a cardiologist until his health condition became severely deteriorated to the point that he could not even get a

surgery and died on October 27, 2019.

49.     These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to DECEDENT's constitutional rights and serious medical needs as alleged above was substantial.  These actions and omissions on the part of Defendants was so egregious, so outrageous, that they may be fairly said to shock the conscience.  Defendants thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with DECEDENT, her son.

50.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died.  Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural lives.

51.     The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of DECEDENT and Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

52.     Plaintiff brings this claim in her individual capacity and seeks wrongful death damages under this claim for the interference with her familial relationship with DECEDENT.  Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C §1988.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**THIRD CLAIM FOR RELIEF**

**Supervisory and Municipal Liability – Failure to Train – (42 U.S.C. §1983 and**
***Monell*)**

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT,
against Defendants COUNTY and DOES 8-10)

53.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1
through 52 of her Complaint with the same force and effect as if fully set forth herein.

54.     Defendants acted under color of law.

55.     The acts of Defendants as set forth above deprived DECEDENT and Plaintiff of
their particular rights under the United States Constitution, including Plaintiff's
constitutional rights to be free from interference with her familial relationship with
her son, DECEDENT, as well as DECEDENT's constitutional right to timely and
adequate medical attention.

56.     The training policies of Defendant COUNTY were not adequate to train its
employees to handle the usual and recurring situations with which they must deal.

57.     Defendant COUNTY was deliberately indifferent to the obvious consequences
of its failure to train its LASD MCJ staff members adequately, including with respect
to the provision of medical care to inmates, the housing of inmates in a safe
environment, and the health of inmates, particularly inmates with previous health
conditions.

58.     The failure of Defendants COUNTY and DOES 7-10 to provide adequate
training caused the deprivation of Plaintiff's and DECEDENT's rights by Defendants
MALOLOS, RODNEY, FELAHY and DOES 1-6; that is, the defendant's failure to
train is so closely related to the deprivation of the DECEDENT's and Plaintiff's
rights as to be the moving force that caused the ultimate injury.

59.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries.  Accordingly, Defendants DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

60.     Plaintiff COTHRAN brings this claim both individually and as a successor in interest to DECEDENT.  Plaintiff seeks damages for the violations of her consitutional right to be free from interference with her familial relationship with her son, DECEDENT.  Plaintiff additionally seeks survival damages for the violations of DECEDENT's constitutional rights, including his constitutional right to medical care and his consitutional right to be free from interference with his familial relationship with his mother, COTHRAN.  Plaintiff further seeks attorney's fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

**Supervisory and Municipal Liability – Unconstitutional Custom or Policy – (42 U.S.C. §1983 and *Monell*)**

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT, against Defendants COUNTY and DOES 7-10)

61.     Plaintiff hereby re-alleges and incorporates by reference paragraph 1 through 60 of this Complaint as if fully set forth herein.

62.     Defendants acted under color of state law.

63.     Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the COUNTY.

64.     The acts of Defendants as set forth above deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution, including Plaintiff's constitutional rights to be free from interference with her familial relationship with her son, DECEDENT, as well as DECEDENT's constitutional right to timely and adequate medical attention.

65.     On information and belief, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-6 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care that resulted in DECEDENT's serious physical injuries and death.

66.     Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10, together with other COUNTY policymakers and supervisors, respectively, maintained, inter alia, the following unconstitutional customs, practices, and policies:

       a) Not sufficiently staffing the jail on holiday weekends to handle inmates' medical issues, and, relatedly, providing inadequate training regarding staffing the jail on the weekends;

       b) Failing to provide or summon adequate medical treatment to inmates in need of medical treatment, including that relating to specific health conditions, and, relatedly, providing inadequate training regarding providing and/or summoning medical treatment for inmates who have serious and obvious medical needs;

       c) Treating inmates as if no one cares whether they live or die, and, relatedly, providing inadequate training regarding treating inmates as human beings;

       d) Failing to timely transport inmates who are expressing severe pain and having a high fever to the hospital and, relatedly, providing inadequate training regarding when to send inmates with previous medical conditions to the hospital at the appropriate time;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

e) Employing and retaining employees whom Defendants COUNTY and DOES 8-10 at all times material herein knew or reasonably should have known had dangerous propensities for ignoring inmates' medical needs and not providing any attention and/or treatment to inmates with medical conditions and failure to protect DECEDENT from harm;

f) Failing to adequately discipline Defendant COUNTY officers, guards and other employees including Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-7, for the above-referenced categories of misconduct, including "slaps on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g) Announcing that unjustified in-custody deaths and injuries to inmates in the jail are "within policy," including deaths that were later determined in court to be unconstitutional and unjustified.

67.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries. Accordingly, Defendants DOES 7-10 each are liable to Plaintiffs for damages under 42 U.S.C. § 1983.

68.     Defendants DOES 7-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the

constitutional rights of DECEDENT, Plaintiff COTHRAN, and other individuals
similarly situated.

69.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct
and other wrongful acts, DOES 7-10 acted with intentional, reckless, and callous
disregard for the life of DECEDENT and for DECEDENT's and Plaintiff's
constitutional rights.  Furthermore, the policies, practices, and customs implemented,
maintained, and still tolerated by Defendants COUNTY and DOES 7-10 were
affirmatively linked to and were a significantly influential force behind the injuries of
DECEDENT and Plaintiff.

70.     Further, the following cases demonstrate a pattern and practice of the COUNTY
maintaining unconstitutional customs, practices and policies, including an
unconstitutional custom and policy of failing to provide medical treatment and/or
ignoring basic care such that inmate died. These cases also show a pattern and
practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

> 1.     A $1.6 million settlement in August 2015 in a lawsuit filed by the
> family of Austin Losorelli, 23, who committed suicide at the
> Men's Central Jail in 2013.
>
> 2.     On February 20, 2013, the Los Angeles County Attorney's Office
> recommended a $475,000 settlement in a federal civil rights suit
> brought by a prisoner who was beaten by two jailers. Michael
> Holguin was being escorted by a sheriff's deputy on October 18,
> 2009 when a confrontation erupted, reportedly because Holguin
> had been denied a shower. During the ensuing fight the deputy
> struck Holguin in the stomach, forced him to the ground and
> pepper-sprayed him; at that point, a second deputy joined in.
> Holguin, who was handcuffed during the beating, required stitches
> and suffered a broken kneecap. His suit settled in March 2013.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

See: *Holguin v. County of Los Angeles*, U.S.D.C. (C.D. Cal.), Case No. 2:10-cv-08011-GW-PLA.

71.     Plaintiff COTHRAN brings this claim both individually and as a successor in interest to DECEDENT.  Plaintiff COTHRAN seeks damages for the violations of her consitutional right to be free from interference with her familial relationship with her son, DECEDENT.  Plaintiff additionally seeks survival damages for the violations of DECEDENT's constitutional rights, including his constitutional right to medical care and his consitutional right to be free from interference with his familial relationship with his mother, Plaintiff, and including for DECEDENT's pre-death pain and suffering.  Plaintiff further seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Supervisory and Municipal Liability – Ratification – (42 U.S.C. §1983 and *Monell*)

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT, against Defendants COUNTY and DOES 7-10)

72.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 71 of her Complaint with the same force and effect as if fully set forth herein.

73.     Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 acted under color of state law.

74.     The acts of Defendants as set forth above deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution, including Plaintiff's constitutional rights to be free from interference with her familial relationship with her son, DECEDENT, as well as DECEDENT's constitutional right to timely and adequate medical attention.

75.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants MALOLOS,

RODNEY, FELAHY, and DOES 1-6, ratified (or will ratify) the acts of Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-6 and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) Defendants' acts, including a determination that Defendants' acts were "within policy."

76.     On information and belief, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-6 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care to DECEDENT, which resulted in DECEDENT's injuries and death.

77.     The following cases demonstrate a pattern and practice of the COUNTY maintaining unconstitutional customs, practices and policies, including an unconstitutional custom and policy of failing to provide medical treatment and/or ignoring basic care such that inmate died. These cases also show a pattern and practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

1.     A $1.6 million settlement in August 2015 in a lawsuit filed by the family of Austin Losorelli, 23, who committed suicide at the Men's Central Jail in 2013.

2.     On February 20, 2013, the Los Angeles County Attorney's Office recommended a $475,000 settlement in a federal civil rights suit brought by a prisoner who was beaten by two jailers. Michael Holguin was being escorted by a sheriff's deputy on October 18, 2009 when a confrontation erupted, reportedly because Holguin had been denied a shower. During the ensuing fight the deputy struck Holguin in the stomach, forced him to the ground and pepper-sprayed him; at that point, a second deputy joined in. Holguin, who was handcuffed during the beating, required stitches and suffered a broken kneecap. His suit settled in March 2013.

See: *Holguin v. County of Los Angeles*, U.S.D.C. (C.D. Cal.), Case No. 2:10-cv-08011-GW-PLA.

78.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries.  Accordingly, Defendants DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

79.    Plaintiff COTHRAN brings this claim both individually and as a successor in interest to DECEDENT.  Plaintiff seeks damages for the violations of her consitutional right to be free from interference with her familial relationship with her son, DECEDENT.  Plaintiff additionally seeks survival damages for the violations of DECEDENT's constitutional rights, including his constitutional right to medical care and his consitutional right to be free from interference with his familial relationship with his mother, Plaintiff COTHRAN, and including for DECEDENT's pre-death pain and suffering.  Plaintiff further seeks attorney's fees and costs under this claim.

**SIXTH CLAIM FOR RELIEF**

**Failure to Summon Medical Care (Cal. Gov. Code §845.6) (including wrongful death)**

(By Plaintiff COTHRAN, as a successor-in-interest to DECEDENT, against all Defendants)

80.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 79 of this Complaint with the same force and effect as if fully set forth herein.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

81.     Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

82.     Here, Defendants were aware of DECEDENT's medical emergency, as follows: LASD/MCJ staffs were aware of DECEDENT's prior heart surgeries as his mother COTHRAN sent over DECEDENT's pertinent medical records to LASD multiple times since June 7, 2019.  Defendants were alerted on multiple occasions of DECEDENT's chest pains and deteriorating health conditions since DECEDENT's visit to LAC + USC Hospital's ER on September 29, 2019.  On that date, DECEDENT was sent back to jail with no resolution or treatment for his severe chest pains.  Since then, DECEDENT requested multiple times that he be taken to the hospital to see a doctor or specifically a cardiologist.  Although DECEDENT kept having severe chest pain and other pains in his body, his requests to see a doctor or a cardiologist was continuously ignored until October 10, 2019.  On or about October 10, 2019, DECEDENT could not see a doctor but saw Nurse RODNEY at the facility but was only given a cough medicine even though he was not coughing.  When asked why, RODNEY told DECEDENT that he would have to wait.  On or around October 14, 2019, DECEDENT saw doctor FELAHY but he did not take notice of DECEDENT's pains and failed to refer DECEDENT to a cardiologist.  On or around October 20, 2019, DECEDENT was examined by MALOLOS who stated that DECEDENT was appearing healthy but having a respiratory problem.  Shortly thereafter, DECEDENT was taken to an ER at LAC + USC Hospital after collapsing on his cell's floor on the day before.  DECEDENT was placed in ICU on October 20, 2019 but the DECEDENT's health condition had severely deteriorated by the time he was taken to the ER to the extent that there was nothing that could be done for him.

DECEDENT kept having excruciating pains and was in despair until he died on October 27, 2019.  Defendants failed to provide or summon proper medical aid for DECEDENT and failed to timely transport DECEDENT to a hospital where they could receive proper care.  The LASD/MCJ did not have the proper and necessary medical specialists available.

83.     DECEDENT's medical emergencies were obvious.  Defendants are not entitled to immunity where the inmate or person in the care of Defendants is in obvious need of medical care.

84.     Despite Defendants' actual knowledge that DECEDENT was in need of immediate medical care as alleged above, Defendants failed to: (1) conduct a proper medical assessment of DECEDENT; (2) summon immediate emergency medical assistance for DECEDENT; (3) monitor and supervise the progression of DECEDENT's health condition and symptoms; and (4) recognize and identify the urgency of the situation in order to summon proper medical care and/or timely transport DECEDENT to a hospital for medical care especially given their knowledge on DECEDENT's prior heart surgeries and conditions; (5) provide any adequate medical attention; (6) protect DECEDENT from harm.

85.     The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.  California Government Code Section 820(a) states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person.  Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment.  Moreover, a public

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

86.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries, including pain and suffering, and then died.  As another direct and proximate cause of the acts of Defendants, Plaintiff has suffered emotional distress and mental anguish and has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life.

87.     The conduct of the individual defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECDENT and Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages.

88.     Plaintiff COTHRAN brings this claim indiviudally as the mother of DECDENT and as a successor in interest to DECEDENT for the violations of DECEDENT's rights.  Plaintiff seeks survival damages for the violations of DECDENT's right to medical care, and seeks wrongful death damages under this claim, including for the Plaintiff's loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees on this claim.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT, against all Defendants)

89.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

herein.

90.     As alleged above, Defendants were aware that DECEDENT had had heart surgeries, was in need of close monitoring by cardiologists, and that he had been having severe chest pains.  By actively ignoring his requests for aid and medical attention up to September 29, 2019 and even after the brief visit to the ER on September 29, 2019 where DECEDENT never had chance to talk to a cardiologist and was sent back to jail even with continuously existing chest pain and other pains, Defendants forced DECEDENT to suffer severe chest pain, fever, and other pains to the extent that DECEDENT was placed in ICU and it was too late to medically do anything about his health.  Defendants were also aware that COTHRAN cared about DECEDENT and his health so much so that she called, emailed, and mailed almost every day to LASD/ MCJ/ MCC staff, sergeants, and nurses about DECEDENT's need for seeing a cardiologist at least once a month, his pertinent medical records regarding his previous heart surgeries, and DECEDENT's chest pains.  The extent to which Defendants failed to provide medical care to DECEDENT was extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress to Plaintiff COTHRAN and DECEDENT.

91.     As an actual and direct result of such conduct, Defendants caused Plaintiff COTHRAN and DECEDENT to suffer severe emotional distress, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and despair.

92.     As a result of their misconduct, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 are liable for Plaintiff COTHRAN's and DECEDENT's severe emotional distress, either because they were integral participants in the intentional infliction of emotional distress and/or because they failed to intervene to prevent the intentional denial of medical care that caused the emotional distress.

93.     Defendant COUNTY is vicariously liable for the wrongful acts of Defendant

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

DOES 1-10, inclusive, pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

94.     The conduct of Defendants alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff COTHRAN and DECEDENT, and therefore warrants the imposition of exemplary and punitive damages (as to the individual defendants) in an amount according to proof.

95.     Plaintiff COTHRAN brings this claim in her individual capacity and also as a successor-in-interest to DECEDENT.  Plaintiff COTHRAN seeks compensatory damages for the emotional distress that Defendants intentionally inflicted upon her, as well as survival damages for the emotional distress that Defendants intentionally inflicted upon DECEDENT.  Plaintiff COTHRAN brings this claim as a successor-in-interest to DECEDENT and seeks survival damages for the emotional distress that Defendants intentionally inflicted upon DECEDENT.  Plaintiff also seeks punitive damages under this claim.

## **EIGHTH CLAIM FOR RELIEF**

### **Negligence – Medical Malpractice (Wrongful Death)**

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT, against Defendants RODNEY and FELAHY and Defendant COUNTY)

96.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 95 of this Complaint with the same force and effect as if fully set forth herein.

97.     As set forth above, Defendant RODNEY is the nurse at LASD jail clinic. Defendant FELAHY is a doctor at LASD jail clinic. RODNEY saw DECEDENT on or about October 10, 2019 and prescribed a cough medicine to DECEDENT when

DECEDENT was not even coughing but was having severe chest pain, headaches, body aches, and a fever.  On or about October 14, 2019, FELAHY saw DECEDENT but ignored DECEDENT's pains and failed to check his heart or refer him to a cardiologist.  RODNEY and FELAHY have failed to uphold duties to use medical skills, prudence, and diligence as other members of the profession commonly possess and exercise, especially when DECEDENT's prior medical records on his heart surgeries as well as his need to see a cardiologist were known by the LASD staffs and MCC staffs.  DECEDENT also expressed his chest pain to them as well.  *See Lattimore v. Dickey,* 191 Cal. Rptr. 3d 766, 773 (Ct. App. 2015).

98.    Defendants RODNEY and FELAHY have breached the duties when he ignored DECEDENT's symptoms and expressed chest pain, DECEDENT's previous medical records on heart surgeries, and the need to see the cardiologist and simply prescribed a cough medicine to DECEDENT and sent him away.  He failed to conduct a proper medical assessment of DECEDENT, failed to summon immediate emergency medical assistance for DECEDENT, failed to recognize and identify indications of possible inflammation in DECEDENT's heart when his previous heart surgery was about a repeat aortic valve endocarditis.

99.    Plaintiff COTHRAN brings this claim against the COUNTY on a theory of vicarious liability and also brings this claim against RODNEY and FELAHY.  The COUNTY is vicariously liable for the wrongful acts of Defendants RODNEY and FELAHY pursuant to the following specific statute: Section 815.2(a) of the California Government Code provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.  California Government Code Section 820(a) states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person.  Pursuant to California Government Code Section 844.6, a public employee or the government

entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

100.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died.  Also as a direct and proximate cause of the acts of Defendants RODNEY and FELAHY, COTHRAN has suffered emotional distress and mental anguish.  Plaintiff COTHRAN also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECDENT, and will continue to be so deprived for the remainder of her natural lives.

101.   The COUNTY is vicariously liable for the wrongful acts of DOES 6-7 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or him to liability.

102.   Plaintiff COTHRAN brings this claim individually and as a successor-in-interest to DECEDENT.  COTHRAN seeks wrongful death and survival damages on this claim, including for DECEDENT's loss of life, lost earning capacity, and loss of enjoyment of life.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## NINTH CLAIM FOR RELIEF
### Negligence

(By Plaintiff COTHRAN, individually and as a successor-in-interest to DECEDENT, against Defendants MALOLOS, RODNEY, FELAHY and DOES 1-10)

103.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 102 of this Complaint with the same force and effect as if fully set forth herein.

104.   As set forth herein, Defendants have failed to uphold numerous mandatory duties imposed upon them by state law, and by written policies and procedures applicable to Defendants, including but not limited to the duty to provide or summon immediate medical treatment and care where Defendants know or have reason to know that an inmate is in need of immediate medical care. *See* Cal. Gov't Code §845.6.

105.   At all relevant times, Defendants owed DECEDENT a legal duty.  Such legal duty required Defendants to act with reasonable care, as follows: (1) as to LASD/MCJ/MCC/WCC staffs and supervisory DOES, such that unlawful, negligent, and/or reckless conduct by MCJ, including the jail clinic/MCC/WCC DOES, including the failure to provide immediate, proper and adequate medical care would be prevented; (2) protecting DECEDENT while he was incarcerated by COUNTY Defendants and in the custody and care of said Defendants; (3) protecting DECEDENT by providing a reasonably safe environment and adequate supervision and monitoring of DECEDENT; (4) providing adequate and immediate attention to inmates who are having severe pains and having serious medical conditions, including ensuring that timely provision of medical attention by medical practitioners who have adequate knowledge and specialties.

106.   Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 are sued in their individual capacities and official capacities.

107.   Defendants had and have a duty, by law, and by Defendants' own policies and procedures, to protect individuals in the custody and confinement of Defendant COUNTY who are in need of immediate and/or adequate medical care, including DECEDENT.  Defendants were required to, and failed to be properly vigilant, in seeing that the supervision of DECEDENT was sufficient to ensure that DECEDENT would receive the medical care that he needed, particularly considering that Defendants had actual, direct knowledge of DECEDENT's heart condition, heart surgery histories, and need for seeing a cardiologist monthly as set forth in detail in the foregoing paragraphs.

108.   Defendants had a duty to enact and enforce sufficient policies and procedures to ensure that reasonable medical care and/or mental health treatment would be afforded to individuals in the custody and confinement of Defendant COUNTY (such as DECEDENT), as was necessary to protect the health and safety of those in custody and confinement (such as DECEDENT), and also had a duty to maintain proper and appropriate conditions.  This includes continual monitoring of inmates who are known to have medical conditions.  Defendants' duties also include identifying and handling medical and mental health issues, screening inmates for physical fitness for incarceration, and not causing injury to persons in their custody during transport to and within facilities.

109.   Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 were required to and failed to exercise careful supervision of inmates who had previous medical/ health conditions, and said Defendants were required to, and failed to take reasonable action to provide immediate and adequate health treatment to DECEDENT during his incarceration at LASD MCJ.

110.   Defendants have breached their duties, and such breach is a proximate cause of DECEDENT's and Plaintiff's damages.  Defendants owed a duty of care to DECEDENT and said Defendants knew that by keeping DECEDENT in custody, they were charged with the safety and well-being of DECEDENT.

111.   The actions and omissions of Defendants were negligent and reckless, including but not limited to the following:

a) Not sufficiently staffing the jail on holiday weekends to handle inmates' medical issues, and, relatedly, providing inadequate training regarding staffing the jail on the weekends;

b) Failing to provide or summon adequate medical treatment to inmates in need of medical treatment, including that relating to specific health conditions, and, relatedly, providing inadequate training regarding providing and/or summoning medical treatment for inmates who have serious and obvious medical needs;

c) Treating inmates as if no one cares whether they live or die, and, relatedly, providing inadequate training regarding treating inmates as human beings;

d) Failing to timely transport inmates who are expressing severe pain and having a high fever to the hospital and, relatedly, providing inadequate training regarding when to send inmates with previous medical conditions to the hospital at the appropriate time;

e) Employing and retaining employees whom Defendants COUNTY and DOES 8-10 at all times material herein knew or reasonably should have known had dangerous propensities for ignoring inmates' medical needs and not providing any attention and/or treatment to inmates with medical conditions;

f) Failing to adequately discipline Defendant COUNTY officers,  guards and

other employees including Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-7, for the above-referenced categories of misconduct, including "slaps on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g) Announcing that unjustified in-custody deaths and injuries to inmates in the jail are "within policy," including deaths that were later determined in court to be unconstitutional and unjustified.

112.   As a direct and proximate result of Defendants' negligent conduct as alleged above, Plaintiff has suffered emotional distress and mental anguish.  Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life. As a direct and proximate result of Defendants' negligent conduct as alleged above, DECEDENT suffered pain and suffering.

113.   Plaintiff brings this claim against Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 as a successor in interest to DECEDENT and in her individual capacity and seeks wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiff's loss of DECEDENT'S love, companionship, guidance, advice, and support.

**TENTH CLAIM FOR RELIEF**
**Violation of Cal. Civil Code § 52.1**

(Against all Defendants)

114.   Plaintiff repeats and re-allege each and every allegation in paragraphs 1 through 113 of her Complaint with the same force and effect as if fully set forth herein.

115.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from intentionally interfering with a person's constitutional rights, which can be shown by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

a reckless disregard for that person's constitutional rights.  Here, Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10 acted with a reckless disregard for DECEDENT's constitutional rights when they continuously ignored DECEDENT in pain and asking for a cardiologist, which shows Defendants MALOLOS, RODNEY, FELAHY, and DOES 1-10's intent to violate DECEDENT's constitutional rights.

116.   On information and belief, MALOLOS, RODNEY, FELAHY, and DOES 1-10, while working for the COUNTY and acting within the course and scope of their duties, intentionally ignored DECEDENT when he was in pain and ignored his medical condition which required a cardiologist's attention.  These actions resulted in denying DECEDENT necessary medical care.

117.   When MALOLOS, RODNEY, FELAHY, and DOES 1-10 ignored DECEDENT when he was in pain and ignored his need for cardiologist's attention and otherwise failed to provide him medical care, they interfered with DECEDENT's constitutional rights to have adequate medical attention, to be free from state actions that shock the conscience, and to life, liberty, and property.

118.   On information and belief, MALOLOS, RODNEY, FELAHY, and DOES 1-10 intentionally ignored DECEDENT when DECEDENT was in pain and ignored his need for a cardiologist's attention.  Defendants failed to provide DECEDENT medical care as described above, and in doing so they violated DECEDENT's constitutional rights.  On information and belief, DECEDENT reasonably believed and understood that MALOLOS, RODNEY, FELAHY, and DOES 1-10 intentionally ignored his pain and his obvious need for a cardiologist's attention and understood and believed that Defendants failed to provide him medical care with the intent to violate his constitutional rights and/or to prevent him from exercising his constitutional rights.  MALOLOS, RODNEY, FELAHY, and DOES 1-10's actions

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

against DECEDENT were unreasonable and showed reckless disregard for DECDENT's constitutional rights.

119.   The conduct of MALOLOS, RODNEY, FELAHY, and DOES 1-10 was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

120.   The COUNTY is vicariously liable for the wrongful acts of MALOLOS, RODNEY, FELAHY, and DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.  Defendants DOES 7-10 are vicariously liable under California law and the doctrine of *respondeat superior.*

121.   The conduct of MALOLOS, RODNEY, FELAHY, and DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiff's rights, justifying an award of exemplary and punitive damages as to MALOLOS, RODNEY, FELAHY, and DOES 1-10.

122.   Plaintiff COTHRAN brings this claim as a successor-in-interest to DECEDENT.  Plaintiff seeks survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering, lost earning capacity and loss of life and loss of enjoyment of life.

123.   Plaintiff also seeks attorney's fees and a multiplier under this claim pursuant to Cal. Civ. Code §52 *et seq.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants County of Los Angeles, MALOLOS, RODNEY, FELAHY, and Does 1-10, inclusive, as follows: (a) For compensatory damages in an amount to be proven at trial, including compensatory damages, survival damages and wrongful death damages under federal and state law; (b) For funeral and burial expenses; (c) For DECEDENT's pre-death pain and suffering, lost earning capacity, and loss of enjoyment of life according to proof at trial; (d) For punitive damages against the individual Defendants in an amount to be proven at trial; (e) For statutory damages; (f) For interest; (g) For reasonable attorney's fees, including litigation expenses and a multiplier; (h) For costs of suit; and (i) For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

DATED: April 2, 2021                    LAW OFFICES OF DALE K. GALIPO

_____
Dale K. Galipo
*Attorney for Plaintiff*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully Submitted,

DATED: April 2, 2021                    LAW OFFICES OF DALE K. GALIPO

_____

Dale K. Galipo

*Attorney for Plaintiff*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL